CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 02 2011

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES JERALL SMITH | ) CIVIL ACTION NO. 7:11CV00230 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| vs. | ) |
| J. TURNER, *et al.*, | ) By: Samuel G. Wilson |
| | ) United States District Judge |
| Defendants. | ) |

This is an action pursuant to 42 U.S.C. § 1983 by plaintiff, Charles Jerall Smith, an inmate at Red Onion State Prison proceeding *pro se* and *in forma pauperis*, against defendants, J. Turner, T. Adams, D. Thompson, T. Hale, L. Mullins, R. Kilgore, V. Phipps, R. Deel, R. Rowlette, Tracy Ray, Fred Schilling, John Garman, Vanessa Fisher (a private party), and several "John Doe" prison guards and inmates, alleging that defendants abridged his constitutional rights by retaliating against him for filing grievances and complaints. Smith maintains that defendants retaliated against him by contaminating his medication, withholding treatment and testing after Smith ingested the contaminated medication, and by stealing his incoming mail. Smith seeks compensatory damages and declaratory and injunctive relief. In total, Smith filed over 400 pages with the court, including a 157 page complaint and forty-seven attached exhibits. His complaint is often rambling and unrelated to his underlying claims. The court finds that Smith's allegations appear fanciful and give no hint of being fueled by anything more than his own imagination and speculation. Consequently, the court dismisses his action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.**

Smith claims that in mid-February 2010, defendants contaminated his medication by placing his pills in bodily fluid (urine, saliva and/or semen) instead of water. Smith states that upon ingestion, he immediately noticed the substance in the medicine cup had a "foul taste." (Compl. Ex. 1, at 8, ECF No. 1.) Smith maintains that defendants contaminated his pills in retaliation for complaints he made to the United States Department of Justice against ROSP. After consuming the substance, Smith states he developed flu-like symptoms and painful fluid-filled bumps on his head. Thereafter, the defendant employees at Red Onion allegedly refused to provide Smith with health care services, including tests for diseases he believes he contracted from ingesting the bodily fluid. Based on his pleadings, however, health care officials at the Red Onion treated Smith with antibiotics, prescribed blood pressure medication and tested him for other possible problems.

Smith also alleges that an officer stole incoming mail addressed to Smith from his aunt and from a friend, gave his mail to other inmates, and conspired to cover up the theft. Smith maintains that he did not receive a letter his aunt claimed to have sent him and that another inmate "flashed a piece of paper which looked to be a letter and began laughing." (Compl. Ex. 1, at 36.) According to Smith, other inmates previously told him that they planned to convince an officer to steal his mail and give it them. Smith claims that an officer delivering the mail secretly gave another inmate Smith's mail, although, according to Smith the officer denied this when Smith confronted him. Smith also overheard conversations between inmates in which he believes the inmates were referring to his friend who sent him the allegedly stolen mail, although he did not hear any reference to her by name.[1] Smith also claims that some inmates obtained the

---

[1] Smith overheard the following conversations between other inmates:

telephone number of Smith's friend from her letters to Smith and began an inappropriate relationship with her. However, correspondence from Smith's friend, which Smith included as an attachment to his complaint states, "I have not written to any other inmates but you and no one has written to me." (ECF No. 12, Ex. 29.) Smith's friend warns Smith not to let paranoia get the best of him. Smith also attached to his complaint several letters he received from his friend during the timeframe he alleges defendants were stealing his mail.

Although Smith filed grievances regarding these matters, prison officials allegedly failed to take any action to stop the mail theft or punish the employee who stole his mail. Smith alleges that defendants stole his mail in retaliation for complaints he made to the United States Department of Justice and other authorities against ROSP. Smith also maintains that his friend and certain other defendants entered into a settlement agreement regarding the mail theft, and that he is owed money from this settlement.[2]

---

Inmate Rip: "[T]he one with the big forehead, . . . I got an Indian b**** that full up." Smith had allegedly joked with his friend about her forehead in the past.
(Compl. Ex. 1, at 41.)

Inmate "A": "[Did Jay tell you what] that b**** said?"
Inmate "B": "Don't worry about it."
(Compl. Ex. 1, at 46.)

Inmate "A": "She wrote me back,"
Inmate "B": "Who, the girl that's been writing you?"
Inmate "A": "Nah, the other one"
Inmate "B": "The other one."
(Compl. Ex. 4, at 2.)

Inmate "A": "She said call her" (. . .)
Inmate "B": "Is there anything you want me to tell her?"
Inmate "A": "Yeah, tell her I got the letter…I love her." (. . .) "I got her some bed sheets"
(Id. at 21).

[2] Smith submitted a letter to the court requesting appointment of an attorney to assist him in negotiating his share of the proceeds from this alleged settlement. (ECF No. 17.) Smith has also filed a motion for appointment of counsel (ECF No. 5.). However, "it is well settled that in civil actions the appointment of counsel should be allowed only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). Finding no exceptional circumstances in the present case, the court declines to appoint counsel and denies Smith's motion.

## II.

Under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States, and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). To state an adequate claim for relief, Smith's pleadings must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (citation omitted). While the court must accept the claimant's factual allegations as true, Hemi Group, LLC v. City of N.Y., 130 S. Ct. 983, 986–87 (2010), this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Smith's complaint and the attachments to his complaint, fail to set forth facts showing that prison officials contaminated his medicine, stole his mail, or were deliberately indifferent to his medical needs. Therefore, the court dismisses his claims for failure to state a plausible claim for relief.

Smith believes that prison officials contaminated his medication because the substance in the medicine cup had a "foul taste – a taste similar to that of decay" and because defendants seemed to stare at him "unusually" after handing him the pill cup. (Compl. Ex. 1, at 8.) However, Smith's subjective belief is no substitute for objective facts showing that prison officials deliberately contaminated his medication. The court finds Smith's allegations to be fanciful and speculative, and dismisses them for failure to state a plausible claim for relief.

Smith's claim that defendants were deliberately indifferent to his serious medical needs by failing to provide him with medical treatment and tests following his ingestion of a contaminated substance is similarly deficient. Smith must show that defendants acted with deliberate indifference to his serious medical needs in order to state a claim under the Eighth

Amendment for cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). In order to show deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee v. Murphy, 797 F.2d 179, 181-83 (4th Cir. 1986).

However, Smith fails to show that defendants knew of, and disregarded, an objectively serious medical condition, need or risk of harm. To the contrary, Smith's own pleadings show that health officials at the prison treated Smith when he complained. According to Smith's own account, Dr. Ball prescribed medications for the bumps on his skin, his flu-like symptoms and his blood pressure and tested for him HIV, liver dysfunction, and vitamin deficiencies.[3] Therefore, the court dismisses Smith's deliberate indifference to serious medical needs claim because he has failed to state a plausible claim that prison officials ignored those needs.

Smith also fails to show that defendants interfered with his mail. The court finds that Smith's allegations that prison officials and prisoners stole his mail appear to be based on

---

[3] To the extent that Smith disagrees with the type of treatment or tests that defendants provided, a prisoner's disagreement with medical personnel over the course of his treatment does not state a § 1983 claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

5

nothing more than speculation and like his other allegations are not plausible on their face.[4]
Accordingly, the court dismisses them.[5]

## III.

For the reasons stated herein, the court dismisses Smith's claims against all defendants without prejudice pursuant to § 1915(e)(2)(B).[6]

**ENTER**: August 2, 2011.

UNITED STATES DISTRICT JUDGE

---

[4] Smith also claims that defendants violated other constitutional rights, including his right to equal protection. However, the court finds that Smith's factual allegations do not "state a claim to relief that is plausible on its face[,]" Twombly, 550 U.S. at 570, and therefore dismisses all of his other constitutional claims without prejudice.

[5] Because Smith fails to adequately set forth facts plausibly showing that defendants contaminated his medication, stole his mail, or were deliberately indifferent to his medical needs, his other claims that defendants conspired to commit these acts, retaliated against him by committing these acts, or failed to properly address his prison grievances related to these alleged acts, also necessarily fail. Further, Smith's pleadings only offer conclusory allegations that defendants conspired or retaliated against him. These bare allegations are insufficient. See Ruttenberg v. Jones, 283 F. App'x 121, 132 (4th Cir. 2008) ("[T]he bare, conclusory allegation that . . . defendants conspired to violate his constitutional rights" is insufficient.); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) ("*[I]n forma pauperis* plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal[.]"). Nor do inmates have a "constitutional right to participate in grievance proceedings." Id. at 75. Therefore, the court dismisses Smith's claims for retaliation, conspiracy, and failure to properly address his grievances.

Pursuant to 28 U.S.C. § 1367(c), the court declines to exercise supplemental jurisdiction over any state law claims plaintiff asserts related to these same allegations, including plaintiff's claims for intentional infliction of emotional distress, gross negligence, and assault and battery, and dismisses them without prejudice. The court also dismisses Smith's pending discovery motion, (ECF No. 4), as moot.

[6] In addition to the primary complaints in this action, Smith makes several other conclusory accusations. Smith claims that on December 7 and 25, 2010, defendants "ransacked" his cell and read his legal mail. He claims that on December 20, 2010, defendants ate some rice from his meal tray. Smith also claims that his food was poisoned. On February 9, 2011, Smith states he "unconsciously ingested dried feces" while eating his wheat cereal. (Compl. Ex. 5, at 19.) Smith claims that the surveillance footage of his cell block will support his allegations. Plaintiff also states that employee defendants encouraged or permitted certain inmate defendants who were members of a gang to attack the plaintiff and to attempt to compel the plaintiff to join their gang. However, Smith does not allege that he was actually attacked, or that employee defendants failed to adequately protect him. Smith provides no factual evidence in support of any of these claims. Accordingly, the court finds that Smith has failed to provide "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570, and therefore dismisses these claims pursuant to 28 U.S.C. § 1915(e)(2)(B).